UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| FAIZ SHOLIAY, | NO. CIV. 2:13-00958 WBS DAD |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER RE: MOTION TO DISMISS |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION A/K/A FANNIE MAE, U.S. BANK N.A., and DOES 1 through 50, inclusive, | |
| Defendants. | |

----oo0oo----

Plaintiff Faiz Sholiay filed suit against defendants Federal National Mortgage Association also known as Fannie Mae ("Fannie Mae"), U.S. Bank N.A. ("U.S. Bank"), and Does one through fifty in state court, bringing claims arising from the foreclosure of his home. Defendants then removed the proceeding to this court on the basis of diversity jurisdiction. (Docket No. 1.) Currently before the court is defendants' motion to dismiss the Complaint in its entirety for failure to state a

1

claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 7.)

I. Factual and Procedural Background

In 2004, plaintiff obtained a loan from Downey Savings in the amount of $161,000. (Notice of Removal Ex. A ("Compl.") ¶ 5 (Docket No. 1-1).) The loan agreement was secured by a Deed of Trust recorded against the property located at 1597 Lynell Court in Yuba City, California ("the Lynell property"). (Id. Ex. 1.) The beneficiary of the Deed of Trust was Downey Savings. (Id.; Compl. ¶ 5.) In July 2009, the Federal Deposit Insurance Corporation, as receiver for Downey Savings, assigned the Deed of Trust and loan to U.S. Bank. (Id. ¶ 8, Ex. 2.)

Plaintiff alleges that in June 2011 he was informed that his monthly mortgage payment to U.S. Bank would increase from $1,000 to $1,400 per month because U.S. Bank had to pay for property taxes and insurance for the Lynell property. (Id. ¶¶ 7, 14.) Plaintiff could not afford to make the increased payment. (Id. ¶ 14.) Beginning in June 2011, he ceased making payments and National Default Servicing Corporation ("National"), as the agent for U.S. Bank Home Mortgage, initiated foreclosure proceedings against the Lynell property by issuing and recording a Notice of Default on October 31, 2011. (Id. ¶¶ 9, 15, Ex. 3.) Plaintiff alleges that U.S. Bank Home Mortgage is owned by U.S. Bank. (Id. ¶ 9.)

Plaintiff alleges that in early September 2011, he had submitted an "Initial Package" to U.S. Bank by which he was requesting a modification to his loan agreement through the Home Affordable Mortgage Program ("HAMP"). (Id. ¶ 16.) He further

2

alleges that in acknowledging receipt of the Initial Package, U.S. Bank stated if he qualified for a "loss mitigation foreclosure alternative," he would be "offered a trial period plan" ("TPP") in which he would make trial payments. (Id.) Through the remainder of 2011 and all of 2012, plaintiff alleges that he was in communication with U.S. Bank regarding the HAMP modification process. (Id. ¶ 17.)

On February 1, 2012, National issued and recorded a Notice of Trustee's Sale for the Lynell property. (Id. ¶ 9.) Plaintiff alleges that U.S. Bank postponed the sale several times to obtain more documents from him. (Id. ¶ 17.) On September 13, 2012, U.S. Bank sent a letter to plaintiff informing him that he would not receive a HAMP modification because he had not provided the necessary documents to process his application. (Id. ¶ 18, Ex. 7.) Plaintiff alleges that he did provide the requested documents and that as of September 13, 2012, he qualified for a HAMP modification pursuant to the objective guidelines of that program and should have been placed in the TPP stage. (Id. ¶¶ 19-20.)

Plaintiff then received a letter dated October 10, 2012 from U.S. Bank acknowledging his request for consideration of alternative to foreclosure options and requesting additional documentation. (Id. ¶ 21, Ex. 8.) The letter stated that while plaintiff's request was being considered, U.S. Bank would not conduct a scheduled foreclosure sale so long as the package it received was substantially complete. (Id. Ex. 8.) Plaintiff alleges that he provided the documents requested in the letter, but that U.S. Bank refused to consider the additional documents

3

1 and grant a HAMP modification.  (Id. ¶¶ 22-23.)

2   A trustee's sale of the Lynell property occurred on January 31, 2013.  (Id. ¶¶ 11-12.)  In February 2013, National issued and then recorded a Trustee's Deed Upon Sale, which transferred the property to Fannie Mae.  (Id. ¶ 13, Ex. 5.)

  Plaintiff brings claims for: (1) wrongful foreclosure; (2) fraud; (3) negligent misrepresentation; and (4) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.  Defendants now move to dismiss all claims for failure to state a claim under Rule 12(b)(6).

II. Legal Standard

  To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).  In deciding whether a plaintiff has stated a claim, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).

///

III. <u>Analysis</u>

    A.    <u>Wrongful Foreclosure</u>

Congress created HAMP as part of the Troubled Assets Relief Program, pursuant to the Emergency Economic Stabilization Act of 2008. <u>Cleveland v. Aurora Loan Servs., LLC</u>, C 11-0773 PJH, 2011 WL 2020565, at *3 (N.D. Cal. May 24, 2011). Under this program, mortgage loan servicers enter into Servicer Participation Agreements ("SPAs") with Fannie Mae, acting as the financial agent for the United States. <u>Phu Van Nguyen v. BAC Home Loan Servs., LP</u>, C-10-01712 RMW, 2010 WL 3894986, at *1-2 (N.D. Cal. Oct. 1, 2010). The servicer's obligations are set forth in the SPA, as well as Program Guidelines established by the Department of the Treasury. <u>Id.</u> at *2. "The HAMP program itself is not codified as a public law." <u>Cleveland</u>, 2011 WL 2020565, at *3.

Plaintiff argues that because he alleges that he met the guidelines to be eligible for a HAMP loan modification and could have made the payments for a modified loan, U.S. Bank was obligated to offer him a modification.[1] (<u>See</u> Opp'n at 6 (Docket No. 8).) Simply put, plaintiff's wrongful foreclosure claim hinges on an entitlement to a modification under HAMP.

It is well established in the Ninth Circuit, however, that there is no implied or express private right of action to

///

---

[1] Plaintiff alleges that Fannie Mae is liable for all of the wrongful acts committed by U.S. Bank because it is U.S. Bank's successor. (Compl. ¶ 2.) Because, as explained below, plaintiff fails to allege any claim against U.S. Bank, he likewise fails to do so against Fannie Mae.

sue lenders or loan servicers for violation of HAMP.[2]  Ingalsbe v. Bank of Am., N.A., 1:10-CV-01665-OWW, 2010 WL 5279839, at *5 (E.D. Cal. Dec. 13, 2010) ("The consensus among district courts in the Ninth Circuit is that there is no private right of action under HAMP."); Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177, 1184 (N.D. Cal. 2009).  Because plaintiff has no private right of action against U.S. Bank under HAMP, his wrongful foreclosure claim predicated on allegations that defendant violated HAMP by denying him a loan modification fails.  This is so even though plaintiff alleges that U.S. Bank denied his request for a loan modification after he submitted all the required documents.  HAMP does not require a lender or servicer to give a borrower a HAMP modification even if the borrower meets all of HAMP's eligibility requirements.[3]  See Kimball v. Flagstar

---

[2] The theory that a borrower is a third-party beneficiary to a HAMP servicer's agreement and may sue for breach of that agreement has also been rejected.  See, e.g., Hoffman v. Bank of Am., N.A., C 10-2171 SI, 2010 WL 2635773, at *2-5 (N.D. Cal. June 30, 2010).  Plaintiff did not expressly allege that U.S. Bank entered into a SPA, nor did he bring a breach of contract claim.

[3] The court in Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769 (4th Cir. 2013), rejected the argument that the lender's promise to the U.S. Treasury to comply with the HAMP guidelines and the borrower's taking time to complete and submit a loan modification application created an implied-in-fact contract to process and approve the application under HAMP.  Spaulding, 714 F.3d at 777-78.  Unlike the borrower plaintiff in Spaulding, plaintiff does not bring a claim for breach of contract, nor does he allege that U.S. Bank entered into a SPA.  However, to the extent he alleges that U.S. Bank was obligated under HAMP to give him a loan modification if he were eligible under the HAMP guidelines merely because it considered his application, Spaulding rejected that argument.  Plaintiff attempts to distinguish Spaulding because the plaintiffs there failed to properly submit the required documentation, while plaintiff alleges that he submitted all the documentation U.S. Bank requested.  The Spaulding court, however, explained that the problem was that the defendant made no offer to process an

6

1  Bank F.S.B., 881 F. Supp. 2d 1209, 1224 (S.D. Cal. 2012).

2  Plaintiff provides no other legal basis for the court to find that U.S. Bank had to provide him with a loan modification even if he met the HAMP eligibility guidelines. Plaintiff alleges that the September 28, 2011 letter that U.S. Bank sent "specifically states that if plaintiff qualified for a 'loss mitigation foreclosure alternative' he would be 'offered a trial period plan (TPP)' by which he would make trial payments." (Compl. ¶ 16.)  This is a mischaracterization of the letter, which actually provides: "If you qualify for a loss mitigation foreclosure alternative, you may be offered a trial period plan ("TPP"), depending on the alternative." (Compl. Ex. 6.)  The court is not required to accept as true allegations that are contradicted by documents incorporated in the complaint. Dent v. Cox Commc'ns Las Vegas, Inc., 502 F.3d 1141, 1143 (9th Cir. 2007) (a district court must accept as true the allegations in a plaintiff's complaint, unless contradicted by documents properly accompanying the complaint and incorporated therein); Garcia v. Wachovia Mortg. Corp., 676 F. Supp. 2d 895, 900 (C.D. Cal. 2009) (a "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint" (quoting Sumner Peck Ranch, Inc. v. Bureau of Reclamation, 823 F. Supp. 715, 720 (E.D. Cal. 1993)).  Moreover, the qualified statement is plainly not a promise to provide

---

application under HAMP.  Likewise, nothing in the letters from U.S. Bank evidence a definitive offer to provide plaintiff a loan modification if he meets the HAMP guidelines.  (See Compl. Ex. 6.)  Rather, U.S. Bank stated that it needed to determine if he was eligible and qualified for a loss mitigation foreclosure alternative.  (Id.)

7

plaintiff with a loan modification if he met the HAMP eligibility guidelines.

Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547 (7th Cir. 2012), and West v. JPMorgan Chase Bank, N.A., 214 Cal. App. 4th 780 (4th Dist. 2013), are inapposite. In Wigod, the Seventh Circuit concluded that a trial loan modification agreement, or TPP agreement, constituted a valid, enforceable contract by which the defendant promised to offer the plaintiff a permanent loan modification if she met two conditions. Wigod, 673 F.3d at 560-61. Unlike the TPP agreement in Wigod, the TPP agreement at issue in West did not expressly provide that the plaintiff would receive a permanent loan modification if she complied with the agreement's terms. Nevertheless, the court concluded that if she complied, the defendant bank was required to grant her a permanent modification under HAMP and the express and implied obligations of the TPP agreement. West, 214 Cal. App. 4th at 796-98; see id. at 292 (explicitly noting that the question of whether HAMP creates a private right of action would not be addressed). Plaintiff did not allege that he entered into a trial loan modification agreement with defendant. The contract on which the Wigod and West courts relied to find a promise to offer a loan modification to a qualified borrower is therefore absent in this case.

Plaintiff does not otherwise allege that there was any contract, implied or written, between himself and U.S. Bank that his loan modification was to be processed under HAMP guidelines or that if he was eligible for a loan modification under those guidelines he would receive a loan modification. None of the

8

letters he attached to his Complaint from U.S. Bank provides a basis for finding any such contract. Accordingly, plaintiff's claim for wrongful foreclosure must be dismissed.[4]

### B. Fraud and Negligent Misrepresentation

Under California law, a claim of fraud has five elements: "(a) misrepresentation (false representation, concealment, or nondisclsosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996) (citing Cal. Civ. Code § 1709); Wilson v. Household Fin. Corp., CIV S-12-1413 KJM AC, 2013 WL 1310589, at *4 (E.D. Cal. Mar. 28, 2013) (Mueller, J.).

"The elements of negligent misrepresentation under California law are: '(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.'" Argueta v. J.P. Morgan Chase, Civ. No. 2:11-441 WBS GGH, 2011 WL 6012323, at *4 (E.D. Cal. Dec. 1, 2011) (Shubb, J.) (citing Apollo Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226, 243 (2d Dist. 2007)). "In contrast to fraud, negligent misrepresentation does not require knowledge of falsity."

---

[4] To the extent that plaintiff also bases his wrongful foreclosure claim on allegations that U.S. Bank fraudulently misled plaintiff into believing that he was in the loan modification process, while simultaneously bringing foreclosure proceedings against him, the claim must be dismissed because, as explained below, plaintiff has failed to plead a claim of fraud.

9

Apollo, 158 Cal. App. 4th at 243.  A defendant who "makes false statements, honestly believing they are true, but without reasonable ground for such belief . . . may be liable for negligent misrepresentation." Platt Elec. Supply, Inc. v. EOFF Elec., Inc., 522 F.3d 1049, 1055 (9th Cir. 2008).  "However, a positive assertion is required; an omission or implied assertion or representation is insufficient." Apollo, 158 Cal. App. 4th at 243.  Furthermore, the alleged misrepresentations must refer to past or existing material facts, rather than "promises regarding future events." Garcia v. Ocwen Loan Servicing, LLC, C 10-0290 PVT, 2010 WL 1881098, at *2 (N.D. Cal. May 10, 2010).

In the mortgage fraud context, California district courts have generally required that negligent misrepresentation be pled with particularity under Rule 9(b).  See, e.g., Villegas v. Wells Fargo Bank, N.A., C 12-02004 LB, 2012 WL 4097747, at * 7 (N.D. Cal. Sept. 17, 2012); Argueta, 2011 WL 6012323 at *4; Mehta v. Wells Fargo Bank, N.A., 737 F. Supp. 2d 1185, 1199 (S.D. Cal. 2010).  But see Petersen v. Allstate Indemnity Co., 281 F.R.D. 413, 418 (C.D. Cal. 2012) (declining to apply Rule 9(b) to claims of negligent misrepresentation in an insurance dispute).  The Ninth Circuit has also applied Rule 9(b)'s pleading requirements to claims that "sound in fraud" under the UCL.  See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

Under Federal Rule of Civil Procedure 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give

10

defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks and citations omitted)). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess, 317 F.3d at 1106 (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)). "The plaintiff must [also] set forth what is false or misleading about a statement, and why it is false." Id. (quoting In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994)).

Plaintiff does not allege a plausible claim of fraud or negligent misrepresentation. Plaintiff alleges that "a U.S. Bank representative made misrepresentations as stated above that [he] would be placed into the HAMP modification program."[4] (Compl. ¶ 41.) Plaintiff did not previously allege, however, any misrepresentations. The Complaint is bereft of allegations that U.S. Bank promised plaintiff that he would be given a HAMP modification. As explained above, plaintiff's allegation that U.S. Bank stated that in a letter that "if plaintiff qualified for a 'loss mitigation foreclosure alternative' he would be 'offered a trial period plan (TPP)' by which he would make trial payments," is actually contrary to what that letter states.

Plaintiff's allegation that U.S. Bank made

---

[4] Because the court dismisses plaintiff's fraud and negligent misrepresentation claims on alternative grounds, it need not reach defendants' argument regarding plaintiff's failure to allege tender.

11

misrepresentations that he would receive a HAMP modification alone is insufficient to meet Rule 9(b)'s particularity standard. Plaintiff alleges no facts indicating the content of such misrepresentations, when they were made, how, or by whom. Plaintiff contends that the allegation is sufficient because U.S. Bank has better access to information regarding contact with customers, (Opp'n at 10-11), but here the statements are alleged to have been made to plaintiff and therefore he is as equally knowledgeable as defendant to know the circumstances of their communications.

Plaintiff alternatively argues that U.S. Bank's denial of his request for a loan modification was fraudulent because U.S. Bank denied plaintiff's request for failure to provide documents that plaintiff alleges he provided.  (Opp'n at 11.) Assuming the denial constitutes a misrepresentation, plaintiff did not pled any facts to suggest that he relied on that denial. He did not allege that he acted or declined to act because U.S. Bank informed him that he did not receive a loan modification.

Plaintiff also alleges that U.S. Bank "pursued the foreclosure sale despite representing to plaintiff that no foreclosure sale would take place during the modification process." (Compl. ¶ 46.)  Plaintiff did not allege, however, that the modification process was still ongoing when the foreclosure sale occurred.  According to the October 10, 2012 letter U.S. Bank sent him, review of his request for consideration of alternatives to foreclosure options would take up to thirty days.  (Id. Ex. 8.)  It is not clear if this time period ran from the date of the letter or the date U.S. Bank

12

received the additional documents the letter requested. Plaintiff does not allege when he submitted the additional documents, only that on January 31, 2013 U.S. Bank conducted a trustee's sale. (See id. ¶ 23.)

Even if the modification process was ongoing when the foreclosure sale occurred, plaintiff did not allege facts sufficient to establish that he relied on U.S. Bank's statement and that his reliance resulted in damages. Plaintiff argues that the October 10, 2012 letter led him to believe that he was being re-evaluated for a loan modification and that because the process was ongoing, he did not seek legal advice.[5] (Opp'n at 12; see Compl. ¶ 46.)

In Newgent v. Wells Fargo Bank, N.A., 09CV1525 WQH, 2010 WL 761236 (S.D. Cal. Mar. 2, 2010), the plaintiff alleged that Wells Fargo told her that if she made a payment, it would process her loan modification documents and delay a trustee's sale of her home. Newgent, 2010 WL 761236, at *1. Plaintiff sent a check and Wells Fargo cashed it prior to November 6, 2008. Id. Wells Fargo nonetheless sold plaintiff's home on that date. Id.

The court dismissed the plaintiff's claim for fraud, explaining that she had not pled "facts which would allow her to establish a causal connection between the alleged fraud and the

---

[5] Defendants contend that because the October letter did not mention a trial plan or any other loan modification, a reasonable person would not believe that a loan modification was being considered. (Reply at 9:13-23 (Docket No. 9).) This argument proves too much, however. The letter provides that plaintiff will be considered for alternative to foreclosure options and lists account modifications as an example of a "foreclosure alternative solution[]." (Compl. Ex. 8.)

13

alleged damages." Id. at 5.  Although the plaintiff alleged that but for Wells Fargo's deception she would have taken legal action to forestall the sale of her home, she did "not allege facts that support[ed] a cognizable theory upon which she would have succeeded in preventing the trustee's sale." Id.  Further, she did not assert that Wells Fargo was under any obligation to agree to a modification of her loan, even if she had succeeded in delaying the sale of her home.  Id.

Plaintiff likewise does not allege facts showing that his reliance on U.S. Bank's statement caused the trustee's sale of his home.  He fails to allege facts suggesting how hiring a lawyer could have prevented the sale, given the absence of a legal ground obligating U.S. Bank to provide a modification of his loan.  Unless plaintiff can allege that U.S. Banks' statement caused him not to take an action that plausibly would have prevented the trustee's sale, then its statement could not have resulted in his damages because, as he alleges, he had received a Notice of Default in October 2011 stating that he was in default on his loan payments, (Compl. ¶ 9).  See Manzano v. Metlife Bank N.A., CIV. 2:11-651 WBS DA, 2011 WL 2080249, at *5 (E.D. Cal. May 25, 2011) (Shubb, J.) (finding that plaintiff failed to plead plausible fraud claim where she did not allege that defendant's statements caused her to continue to not make loan payments that she otherwise would have resumed making); Mehta, 737 F. Supp. 2d at 1201 (dismissing fraud and negligent misrepresentation claims where documentation submitted by plaintiff was not clearly done in reliance on lenders's promise that the foreclosure sale would be postponed and plaintiff did not allege any realistic option to

14

prevent foreclosure had he known that the foreclosure sale would proceed).  Accordingly, plaintiff's claims for fraud and negligent misrepresentation will be dismissed.

    C.    <u>California Business and Professions Code section 17200</u>

California Business and Professions Code section 17200 <u>et seq.</u> ("UCL") prohibits unfair competition, which is defined to include, in relevant part, "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200. "Because Business and Profession Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition . . . . In other words, a practice is prohibited as unfair or deceptive even if not unlawful and vice versa."  <u>Cel-Tech Comm'ns, Inc. v. L.A. Cellular Tel. Co.</u>, 20 Cal. 4th 163, 180 (1999) (internal quotation marks and citations omitted).

To have standing to bring a claim under the UCL, a person must have "suffered injury in fact and [have] lost money or property as a result."  Cal. Bus. & Prof. Code § 17204.  To make that showing, they must: "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice . . . that is the gravamen of the claim."  <u>Kwikset Corp. v. Superior Court</u>, 51 Cal. 4th 310, 322 (2011).  There is no causation "when a complaining party would suffer the same harm whether or not a defendant complied with the law."[6]  <u>Daro v.</u>

---

[6] Plaintiff proposes that he has alleged a UCL claim under all three prongs. A plaintiff "proceeding on a claim of misrepresentation as the basis of his or her UCL action must [also] demonstrate actual reliance on the allegedly deceptive or

15

Superior Court, 151 Cal. App. 4th 1079, 1099 (1st Dist. 2007).

Plaintiff alleges that U.S. Bank violated the UCL when it "engaged in a practice of denying making TPP's per HAMP guidelines and the United States Department of the Treasury directives; made misrepresentations regarding a borrower's right and ability to challenge the bank's calculation of the [Net Present Value]; made misrepresentations about pending foreclosure sales; and wrongfully had trustee's sales conduct when the borrower was qualified for the TPP." (Compl. ¶ 60.)

Even if this conduct could be found to violate the UCL, plaintiff fails to allege that it caused his injury. Plaintiff defaulted on his loan prior to any of the alleged wrongdoing of U.S. Bank. As with his fraud and negligent misrepresentation claims, plaintiff does not allege any facts suggesting how he could have prevented the trustee's sale in the absence of a loan modification that U.S. Bank was not obligated to grant, such as curing the default. As pled, then, the cause of the trustee's sale was his default, not any acts of U.S. Bank. Without adequately alleging causation, plaintiff lacks standing to bring a UCL claim. See DeLeon. v. Wells Fargo Bank, N.A., 10-CV-01390-LHK, 2011 WL 311376, at *7 (N.D. Cal. Jan. 28, 2011) ("Without some factual basis suggesting that Plaintiffs could have cured the default in the fall of 2009, the Court cannot reasonably infer that Wells Fargo's alleged misrepresentations resulted in the loss of Plaintiffs' home. Rather, the facts

---

misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." In re Tobacco II Cases, 46 Cal. 4th 298, 306 (2009).

16

alleged suggest that Plaintiffs lost their home because they became unable to keep up with monthly payments and lacked the financial resources to cure the default."); see also Lawther v. OneWest Bank, FSB, C-10-00054 JCS, 2012 WL 298110, at *25 (N.D. Cal. Feb. 1, 2012). Accordingly, plaintiff's UCL claim must be dismissed.

IT IS THEREFORE ORDERED that defendants' motion to dismiss be, and the same hereby is, GRANTED.

Plaintiff has twenty days from the date of this Order to file an amended complaint, if he can do so consistent with this Order.

DATED: July 16, 2013

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE