1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10
                              ----oo0oo----
11

12   FAIZ SHOLIAY,                    NO. CIV 2:13-00958

13            Plaintiff,              MEMORANDUM AND ORDER RE: MOTION
                                      TO DISMISS FIRST AMENDMED
14        v.                          COMPLAINT

15   FEDERAL NATIONAL MORTGAGE
     ASSOCIATION A/K/A FANNIE MAE,
16   U.S. BANK N.A., and DOES 1
     through 50, inclusive
17
              Defendants.
18

19

20                            ----oo0oo----

21            Plaintiff Faiz Sholiay brought this action against

22   defendants Federal National Mortgage Association ("Fannie Mae")

23   and U.S. Bank N.A. ("U.S. Bank") arising from the foreclosure of

24   his home.  After the court granted defendants' motion to dismiss

25   the original Complaint, plaintiff timely filed a First Amended

26   Complaint ("FAC").  (Docket No. 14.)  Defendants now move to

27   dismiss the FAC for failure to state a claim pursuant to Federal

28   Rule of Civil Procedure 12(b)(6).  (Docket No. 15-1.)

                                  1

1    I.    Factual & Procedural History

2              The factual background of this case is described in

3    detail in the court's July 17, 2013 order granting defendants'

4    motion to dismiss.  (Jul. 17, 2013 Order (Docket No. 13).)  In

5    short, plaintiff he ceased making mortgage payments to U.S. Bank

6    in June 2011 after he was informed that his monthly mortgage

7    payment would increase from $1,000 to $1,400 per month.  (FAC ¶¶

8    7, 14.)  After he failed to make payments from June to October

9    2011, National Default Servicing Corporation ("National"), an

10   agent of U.S. Bank Home Mortgage, initiated foreclosure

11   proceedings by issuing and recording a Notice of Default on

12   October 31, 2011. (Id. ¶¶ 9, 15, Ex. 3.)

13             Prior to the issuance of the Notice of Default,

14   plaintiff sought a loan modification through the Home Affordable

15   Modification Program ("HAMP").[1]  (FAC ¶ 16.)  Plaintiff allegedly

16   submitted the required documentation (the "Initial Package") to

17   U.S. Bank in September 2011.  (Id.)  On September 28, 2011,

18   plaintiff received a letter from U.S. Bank acknowledging receipt

19   of the Initial Package.  (Id.)  In relevant part, this letter

20   stated:

21             If  your  package  is  complete,  we  will
               determine your eligibility within 30 calendar
22             days from the date we receive the information
               needed to complete your Package.  If you are
23

24        [1]     HAMP is a program initiated the Treasury Department in
     2009 "to incentivize banks to refinance mortgages of distressed
25   homeowners so they could stay in their homes."  Corvello v. Wells
     Fargo Bank, N.A., --- F.3d ----, 2013 WL 4017279, at *1 (9th Cir.
26   2013).  The mechanics of obtaining a loan modification, as well
     as the applicable eligibility guidelines, are set forth in
27   Treasury Supplemental Directive 09-01.  See U.S. Treas., HAMP
     Supplemental Directive 09-01 (Apr. 6, 2009).
28
                                    2

1
2
3
4
5

> ineligible, we will provide you with a written Non-Approval Notice of the reason for your ineligibility. If you are eligible, we will process the Package to determine if you qualify . . . If you qualify for a loss mitigation foreclosure alternative, you may be offered a trial period plan ("TPP"), depending on the alternative.

6   (Def's Req. for Judicial Notice ("RJN") Ex. A, at 47 (Docket No.

7   16-1).)  Plaintiff alleges that he remained in contact with U.S.

8   Bank through the remainder of 2011 and all of 2012 and provided

9   U.S. Bank with all requested documentation.  (FAC ¶ 17.)

10  Plaintiff also alleges that U.S. Bank regularly requested

11  additional documentation from him and voluntarily postponed the

12  trustee's sale multiple times in 2012.  (Id.)

13          On September 13, 2012, U.S. Bank sent plaintiff a

14  letter denying his request for a temporary loan modification.

15  (FAC ¶ 18; RJN Ex. A, at 50.)  This letter stated that plaintiff

16  was ineligible for a loan modification because he did not provide

17  U.S. Bank with all of the information necessary to process his

18  application.  (RJN Ex. A, at 50.)  Plaintiff alleges that he did

19  provide this information to U.S. Bank, (FAC ¶ 19), and that he

20  was qualified for a loan modification.  (Id. ¶ 20.)

21          On October 10, 2012, U.S. Bank sent plaintiff a letter

22  listing the additional documents it needed in order to verify his

23  eligibility for a loan modification. (RJN Ex. A, at 54.)

24  Plaintiff alleges that he provided these documents to U.S. Bank,

25  but that U.S. Bank nonetheless refused to offer him a loan

26  modification.  (FAC ¶¶ 22-23.)  On January 31, 2013, plaintiff's

27  property was sold at a trustee's sale.  (Id. ¶ 12.)  In February

28  2013, National issued and recorded a Trustee's Deed Upon Sale,

1  which transferred the property to Fannie Mae.  (Id. ¶ 13; RJN Ex.

2  A, at 44-45.)

3        Plaintiff filed this action in Sutter County Superior

4  Court on April 18, 2013. (Docket No. 1-1.)  Plaintiff brought

5  claims for: (1) wrongful foreclosure; (2) fraud; (3) negligent

6  misrepresentation; and (4) violation of the California Unfair

7  Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.

8  U.S. Bank removed the complaint to this court under its diversity

9  jurisdiction pursuant to 28 U.S.C. 1332(a). (Docket No. 1.)

10        U.S. Bank then moved to dismiss the Complaint pursuant

11 to Federal Rule of Civil Procedure 12(b)(6) for failure to state

12 a claim on which relief can be granted. (Docket No. 7.)  The

13 court granted U.S. Bank's motion to dismiss on July 17, 2013 and

14 granted plaintiff leave to file an amended complaint consistent

15 with that Order.  (Docket No. 13.)  Plaintiff filed a First

16 Amended Complaint, and U.S. Bank now moves to dismiss that

17 complaint for failure to state a claim.

18 II.  Request for Judicial Notice

19        Although a court is usually "confined to reviewing the

20 body of [the] complaint" on a motion to dismiss, it may "consider

21 documents that were not physically attached to the complaint

22 where the documents' authenticity is not contested, and the

23 plaintiff's complaint necessarily relies on them." Sams v.

24 Yahoo! Inc., 713 F.3d 1175, 1179 (9th Cir. 2013) (citing Lee v.

25 City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001)).

26        Both U.S. Bank and plaintiff have submitted exhibits

27 consisting, in relevant part, of three letters sent to plaintiff

28 by U.S. Bank on September 28, 2011, September 13, 2012, and

4

1 | October 10, 2012, and the Trustee's Deed Upon Sale. (See RJN 44-
2 | 55; Compl. Exs. 6-8 (Docket No. 1-1).)   Although plaintiff
3 | failed to attach these documents to his amended complaint,
4 | plaintiff frequently references them and submitted them as
5 | exhibits alongside his initial complaint. (See id.)  Neither
6 | party has contested the authenticity of these documents.  The
7 | court may therefore consider these documents for purposes of this
8 | motion to dismiss.  See Lee, 250 F.3d at 688.

9 |      The parties have requested judicial notice of various
10 | other documents and facts.  Because it is not necessary for the
11 | court to rely on these sources to resolve this motion, it
12 | declines to rule on the parties' requests regarding them.
13 | III. Legal Standard

14 |      On a motion to dismiss, the court must accept the
15 | allegations in the complaint as true and draw all reasonable
16 | inferences in favor of the plaintiff. Scheuer v. Rhodes, 416
17 | U.S. 232, 236 (1974), overruled on other grounds by Davis v.
18 | Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322
19 | (1972).  To survive a motion to dismiss, a plaintiff needs to
20 | plead "only enough facts to state a claim to relief that is
21 | plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.
22 | 544, 570 (2007).  This "plausibility standard," however, "asks
23 | for more than a sheer possibility that a defendant has acted
24 | unlawfully," and where a complaint pleads facts that are "merely
25 | consistent with" a defendant's liability, it "stops short of the
26 | line between possibility and plausibility." Ashcroft v. Iqbal,
27 | 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-57).
28 |

1   IV.   Discussion

2         A.   Wrongful Foreclosure

3              While plaintiff labels his first claim "wrongful

4   foreclosure," his amended claim essentially alleges a breach of

5   contract.[2]  Plaintiff alleges that U.S. Bank's agreement to

6   consider plaintiff for a loan modification constituted a promise

7   to offer him a loan modification if he was found eligible under

8   the HAMP guidelines.  (FAC ¶ 38.)  Plaintiff then alleges that

9   U.S. Bank breached this promise by refusing to offer him a trial

10  loan modification even though he satisfied these guidelines.[3]

11  (Id. ¶¶ 38-41.)

12             "To state a claim for breach of contract, a plaintiff

13  must show the following: (1) a contract existed; (2) the

14  plaintiff performed his duties or was excused from performing his

15  duties under the contract; (3) the defendant breached the

16  contract; and (4) the plaintiff suffered damages as a result of

17  that breach."  Graybill v. Wells Fargo Bank, N.A., --- F. Supp.

18  _____

19       [2]    Although plaintiff summarily alleges that "the
    trustee's sale was wrongful and must be set aside," (see FAC ¶
20  36), most of his allegations relevant to his wrongful foreclosure
    claim sound in contract.  (See, e.g., id. ¶ 34 ("A borrower may
21  assert state law claims, such as breach of contract, based
    directly on a TPP agreement . . . ."); id. ¶ 41 ("This created an
22  implied in law contract enforc[eable] in state court . . . .").)
         The court is "focus[ed] on the substance of the
23  plaintiff['s] claims, not the plaintiff['s] labels," and will
    therefore construe plaintiff's wrongful foreclosure claim as a
24  breach of contract claim.  Sateriale v. R.J. Reynolds Tobacco
    Co., 697 F.3d 777, 782 (9th Cir. 2012).
25

26       [3]    Plaintiff also alleges that Fannie Mae is liable for
    all of the wrongful acts committed by U.S. Bank because it is
27  U.S. Bank's successor.  (FAC ¶ 2.)  As explained below, plaintiff
    fails to allege any claim against U.S. Bank, and therefore fails
28  to do so against Fannie Mae.

                                  6

1    2d ----, 2013 WL 2949587, at *10 (N.D. Cal. Jun. 14, 2013)

2    (citing First Commercial Mortg. Co. v. Reece, 89 Cal. App. 4th

3    731, 745 (2d Dist. 2001)).  In order for a contract "to be

4    enforceable, a promise must be definite enough that a court can

5    determine the scope of the duty and the limits of performance

6    must be sufficiently defined to provide a rational basis for the

7    assessment of damages." Bustamante v. Intuit, Inc., 141 Cal.

8    App. 4th 199, 205 (6th Dist. 2006) (citation and internal

9    quotation marks omitted).  "The [c]ourt cannot enforce a contract

10   unbounded by specific expectations for performance." Banaga v.

11   Taylor Bean Mortg. Co., No. 11-4007 (JSC), 2011 WL 5056985, at *4

12   (N.D. Cal. Oct. 24, 2011).

13        Plaintiff alleges, as he did in his initial Complaint,

14   that U.S. Bank sent him a letter on September 28, 2011 that

15   "specifically state[d] that if plaintiff qualified for a 'loss

16   mitigation foreclosure alternative' he would be 'offered a trial

17   period plan (TPP)' by which he would make trial payments." (FAC

18   ¶ 39.)  The court cannot take plaintiff's allegation as true

19   insofar as they continue to mischaracterize the contents of this

20   letter. See Dent v. Cox Commc'ns Las Vegas, Inc., 502 F.3d 1141,

21   1143 (9th Cir. 2007) (holding that a district court need not

22   accept as true allegations that are contradicted by documents

23   properly incorporated in the complaint).

24        The letter plaintiff references actually states that

25   U.S. Bank would determine plaintiff's eligibility for a loan

26   modification, and, if it did find him eligible, would determine

27   whether he qualified for a loan modification based on his income,

28   property value, creditworthiness, and other data. (RJN Ex. A, at

7

1   47.)  The letter then states that "if [plaintiff] qualif[ied] for

2   a loss mitigation foreclosure alternative, [plaintiff] may be

3   offered a trial period plan ("TPP"), depending on the

4   alternative."  (Id. (emphasis added).)

5          At no point in this letter did U.S. Bank promise to

6   grant plaintiff a loan modification.  Rather, U.S. Bank stated

7   that plaintiff "may" be offered a loan modification if he was

8   eligible and qualified for one.  (See id.)  Although plaintiff

9   alleges that the use of the word "'may' did not allow [U.S. Bank]

10  to subjectively deny a modification," (FAC ¶ 40), this reading

11  defies conventional usage.  See, e.g., Woodbury v. Brown-Dempsey,

12  108 Cal. App. 4th 421, 433 (4th Dist. 2003) ("Ordinarily, the

13  word 'may' connotes a discretionary or permissive act; the word

14  'shall' connotes a mandatory or directory duty."); accord United

15  States v. Rodgers, 461 U.S. 677, 706 (1983) ("The word 'may' . .

16  . usually implies some degree of discretion.").  To the extent

17  that plaintiff alleges that this letter promised him a loan

18  modification, he cannot state a breach of contract claim because

19  this letter "is plainly not a promise to provide plaintiff with a

20  loan modification."  (July 17 Order 7-8.)

21          Nor can plaintiff state a claim that U.S. Bank breached

22  a promise to "evaluat[e] the modification application."  (FAC ¶

23  40.)  The September 28, 2011 letter made no such promise; rather,

24  it was "merely a description of the HAMP loan modification

25  process."  Graybill, 2013 WL 2949587, at *11.  Although that

26  letter stated that U.S. Bank would determine plaintiff's

27  eligibility and qualifications for a loan modification, (see RJN

28  Ex. A, at 47), this statement is insufficiently definite to

1   constitute an enforceable promise.  While U.S. Bank noted what

2   information it would consider, it did not state how it would

3   ultimately use that information to determine whether plaintiff

4   was eligible and qualified for a loan modification.  (See id.)

5   As a result, this letter provides no basis on which the court

6   could conclude that U.S. Bank complied — or failed to comply —

7   with its promise to consider plaintiff's application.  See Reed

8   v. Wells Fargo Bank, No. C-11-00194 JSW, 2011 WL 4802542, at *7

9   (N.D. Cal. Oct. 11, 2011) (holding that an alleged promise to

10  "fairly consider" plaintiff for a loan modification was

11  insufficiently definite because the court "would not be able to

12  ascertain whether Wells Fargo complied with this term.").

13          Plaintiff's allegations that U.S. Bank promised to

14  process his application "under the HAMP guidelines", (FAC ¶ 38),

15  do not fare any better.  See, e.g., Reed, 2011 WL 4802542, at *7

16  (holding that an alleged promise to "consider a loan modification

17  'pursuant to defined standards Wells Fargo had established

18  through its regulatory overseers'" was "uncertain" and could not

19  establish an enforceable promise); Banaga, 2011 WL 5056985, at *4

20  (holding that defendants' alleged promise "to review Plaintiffs

21  for a loan modification under HAMP and/or MHA" was insufficiently

22  definite to form a contract).

23          Even if U.S. Bank's letter had promised to consider

24  plaintiff for a loan modification, plaintiff has not alleged any

25  facts showing that U.S. Bank violated that promise.  Plaintiff's

26  own exhibits, (see Def.'s RJN Ex. A, at 50), show that U.S. Bank

27  did exactly what it stated it would do: it determined that

28  plaintiff was ineligible for a loan modification and notified him

9

1   of its reasons for doing so.  See Trew v. Int'l Game Fish Ass'n,

2   Inc., 404 F. Supp. 2d 1173, 1178 (N.D. Cal. 2005) (holding that

3   defendant's determination that it could not verify plaintiff's

4   claim that he was eligible for a world record did not breach a

5   promise to award plaintiff that record if eligible).

6        Although plaintiff alleges that he provided all

7   documents requested by U.S. Bank, (FAC ¶¶ 17, 19), he alleges no

8   facts showing that he was in fact eligible or that U.S. Bank

9   failed to consider his application.  Cf. Phipps v. Wells Fargo

10  Bank, N.A., No. CV 10-2025 LJO SKO, 2011 WL 302803, at *11 (E.D.

11  Cal. Jan. 27, 2011) ("The obligations . . . which [plaintiff]

12  seeks to assign to defendants are contingent on HAMP eligibility.

13  The complaint merely lists eligibility criteria, not facts that

14  [plaintiff] met them.").  As a result, plaintiff cannot show

15  either that U.S. Bank promised to consider his application for a

16  loan modification or that it breached that promise.[4]

17  _____

18      [4]   After the court issued its earlier Order on July 17,
    2013, the Ninth Circuit decided a case involving a promise to
19  extend a permanent loan modification to HAMP participants.
    Corvello v. Wells Fargo Bank, N.A., --- F.3d ----, 2013 WL
20  4017279 (9th Cir. Aug. 8, 2013).  The Ninth Circuit held that if
    a borrower "fulfilled all of [his] obligations under the TPP, and
21  the loan servicer has failed to offer a permanent modification,
    the borrower ha[s] valid claims for breach of the TPP agreement."
22  Id. at *5 (citing West v. JPMorgan Chase Bank, N.A., 214 Cal.
    App. 4th 780 (4th Dist. 2013)).
23
        While Corvello admittedly qualifies the court's earlier
24  statement that "HAMP does not require a lender or servicer to
    give a borrower a HAMP modification even if the borrower meets
25  all of HAMP's eligibility requirements," (July 17 Order at 6), it
    does not compel a different result in this case.  Unlike the
26  plaintiffs in Corvello, who had entered into a TPP with Wells
    Fargo, see 2013 WL 4017279, at *2, plaintiff here never entered
27  into a TPP agreement with U.S. Bank.  And unlike Wells Fargo,
    which promised that it "will" provide a permanent loan
28

1          Plaintiff also contends that there was an "implied in

2    law agreement" to place plaintiff into a TPP because U.S. Bank's

3    Servicer Participation Agreement ("SPA") required it to follow

4    the loan approval guidelines set forth by the Treasury

5    Department.  (FAC ¶ 41.)  Even if U.S. Bank had agreed to follow

6    these guidelines, this "was an agreement between the Bank and the

7    Treasury, an agreement to which [plaintiff is] not a party and

8    which [plaintiff has] no authority to enforce."  Spaulding v.

9    Wells Fargo Bank, N.A.,, 714 F.3d 769, 777 (4th Cir. 2013); see

10   also Gutierrez v. PNC Mortg., Civ. No. 10CV01770 AJB, 2012 WL

11   1033063, at *12 (S.D. Cal. Mar. 26, 2012) ("[A]greements under

12   the HAMP do not provide . . . [a] private right of action for

13   borrowers as third party beneficiaries."); Hoffman v. Bank of

14   Am., N.A., C 10-2171 SI, 2010 WL 2635773, at *3 (N.D. Cal. Jun.

15   30, 2010) (noting that "numerous district courts . . . have come

16   to the conclusion that a borrower is not a third party

17   beneficiary" and collecting cases).  Even if plaintiff is correct

18   that U.S. Bank's SPA was designed to benefit distressed

19   borrowers, those borrowers "are generally assumed to be

20   incidental beneficiaries, and may not enforce the contract absent

21   a clear intent to the contrary."  Klamath Water Users Protective

22   Ass'n v. Patterson, 204 F.3d 1206, 1211 (9th Cir. 1999) (citing

23   Restatement (Second) of Contracts § 313(2)).

24          Despite plaintiff's frequent assertions to the

25   _____

26   modification to any borrower who satisfied the applicable
     requirements, see id., U.S. Bank stated only that it "may" offer
27   plaintiff a TPP if it determined that he was eligible and
     qualified for one.  (See Def.'s RJN Ex. A, at 47.)

28

                                11

1    contrary, the California Court of Appeal's decision in <u>West v.</u>

2    <u>JPMorgan Chase Bank, N.A.</u>, 214 Cal. App 4th 780 (4th Dist. 2013),

3    is consistent with this reasoning.  As in <u>Corvello</u>, the issue in

4    <u>West</u> was whether the representations in the plaintiff's TPP

5    agreement amounted to a promise of a permanent loan modification,

6    not whether a loan servicer has an obligation to extend a TPP

7    agreement to a borrower in the first place.[5]  <u>See</u> 214 Cal. App.

8    4th at 796-97.

9         More importantly, <u>West</u> did not hold that a borrower who

10   was denied a loan modification could sue as a third-party

11   beneficiary of an agreement between the loan servicer and the

12   Treasury Department.  Rather, <u>West</u> relied on the HAMP guidelines

13   to determine "the reasonable expectations of the parties" and to

14   guide its interpretation of the TPP agreement.  <u>See id.</u> at 798.

15   Because plaintiff fails to allege that there was an enforceable

16   agreement between himself and U.S. Bank in the first instance,

17   the court need not determine whether the HAMP guidelines informed

18   the parties' understanding of their obligations under any such

19   agreement.

20        Plaintiff's allegations provide no basis for finding

21

22        [5]    In addition to <u>Corvello</u> and <u>West</u>, defendants cite two
     other cases in support of their contention that the letter sent
23   by U.S. Bank created an enforceable contract to offer a temporary
     loan modification.  <u>See</u> <u>Wigod v. Wells Fargo Bank, N.A.</u>, 673 F.3d
24   547 (7th Cir. 2012); <u>Chavez v. Indymac Mortg. Servs.</u>, D061997,
     2013 WL 5273741 (Cal. Ct. App. 4th Dist. Sep. 19, 2013).  Like
25   <u>Corvello</u> and <u>West</u>, these cases are inapposite here because they
     concern whether a borrower who has entered into a TPP is
26   contractually entitled to a permanent loan modification, rather
     than whether an applicant is entitled to a temporary loan
27   modification in the first place.  <u>See id.</u>, 2013 WL 5273741 at *1-
     2; <u>Wigod</u>, 673 F.3d at 557-558.
28
                                    12

1   that there was a contract between plaintiff and U.S. Bank to

2   provide plaintiff with a loan modification.  Nor do they provide

3   a basis for finding that plaintiff was an intended third party

4   beneficiary of any agreement between U.S. Bank and the Treasury

5   Department to offer a temporary loan modification to qualified

6   borrowers. Accordingly, the court must dismiss plaintiff's

7   wrongful foreclosure claim.

8          B.   Negligent Misrepresentation and Fraud

9          Like his wrongful foreclosure claim, plaintiff's claims

10  of negligent misrepresentation and fraud are premised on the

11  allegation that plaintiff "was promised . . . that he would be

12  placed into a trial plan program" and that no foreclosure sale

13  would occur during the loan modification process.  (FAC ¶ 47.)

14  However, "[a] person may not ordinarily recover in tort for

15  breaches of duties that merely restate contractual obligations."

16  Aas v. Superior Court, 24 Cal. 4th 627, 643 (2000); see also

17  United Guar. Mortg. Indem. Co v. Countrywide Fin. Corp., 660 F.

18  Supp. 2d 1163, 1180 (C.D. Cal. 2009) (noting that California law

19  "generally bars tort claims for contract breaches").  "Conduct

20  amounting to a breach of contract becomes tortious only when it

21  violates an independent duty arising from principles of tort

22  law."  Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal.

23  4th 503, 515 (1994).

24          Plaintiff does not allege that U.S. Bank made false

25  statements or omissions of fact in order to induce the formation

26  of a contract.  See, e.g., Robinson Helicopter Co. v. Dana Corp.,

27  34 Cal. 4th 979, 990-91 (2004) (holding that economic loss rule

28  did not bar plaintiff's claim that defendant fraudulently induced

1    agreement by providing false certificates of conformance); cf.

2    Yost v. Nationstar Mortg., LLC, CIV. NO. 1:13-00745 AWI SAB, 2013

3    WL 4828590, at *7 (E.D. Cal. Sept. 9, 2013) (noting that the

4    economic loss rule would not bar a fraud claim arising out of a

5    promise to provide a loan modification "if Plaintiffs could show

6    that Defendants' misrepresentations constitute fraud in

7    inducement rather than a mere failure to perform contractual

8    obligations").  Nor does plaintiff allege that U.S. Bank

9    committed any sort of "fraud extraneous to the contract."  Giles

10   v. Gen. Motors Acceptance Corp., 494 F.3d 865, 880 (9th Cir.

11   2007) (citations and internal quotation marks omitted)).

12        Rather, the alleged misrepresentation and fraud – U.S.

13   Bank's failure to extend plaintiff a loan modification or to

14   forego a trustee's sale despite its representations that it would

15   do so – "amount[] to nothing more than a failure to perform a

16   promise contained in a contract."  Id. at 876; see also Morgan v.

17   Aurora Loan Svcs., LLC, No. CV 12-4350-CAS (MRWx), 2013 WL

18   3448552, at *6 n.6 (C.D. Cal. Jul. 9, 2013) ("What plaintiff is

19   alleging is that defendants failed to review whether she would

20   qualify for a permanent loan modification . . . despite

21   representing to plaintiff that [they] would do so.  Her claim is

22   subsumed within the terms of the parties' agreement.")

23        Because plaintiff's negligent misrepresentation and

24   fraud claims are based solely on U.S. Bank's alleged "failure to

25   perform [its] contractual obligations, [he] can recover only in

26   contract for the economic losses due to [his] disappointed

27   contractual expectations."  Butler-Rupp v. Lourdeaux, 134 Cal.

28   App. 4th 1220, 1229 (1st Dist. 2005).  Accordingly, the court

14

1   must dismiss plaintiff's fraud and negligent misrepresentation

2   claims.

3       C.   <u>California Business & Professions Code Section 17200</u>

4            California's Unfair Competition Law ("UCL") prohibits

5   unfair competition, which includes "any unlawful, unfair, or

6   fraudulent business act or practice."  Cal. Bus. & Prof. Code §

7   17200.  In order to have standing to bring a claim under the UCL,

8   a plaintiff must have "suffered injury in fact and [have] lost

9   money or property as a result."  Cal. Bus. & Prof. Code § 17204.

10  This requires the plaintiff to: "(1) establish a loss or

11  deprivation of money or property sufficient to qualify as injury

12  in fact, i.e., economic injury, and (2) show that economic injury

13  was the result of, i.e., caused by, the unfair business practice

14  . . . that is the gravamen of the claim."  <u>Kwikset Corp. v.</u>

15  <u>Superior Court</u>, 51 Cal. 4th 310, 322 (2011).  There is no

16  causation "when a complaining party would suffer the same harm

17  whether or not a defendant has complied with the law."  <u>Daro v.</u>

18  <u>Superior Court</u>, 151 Cal. App. 4th 1079, 1099 (1st Dist. 2007).

19           Plaintiff's amended complaint reiterates his assertion

20  that U.S. Bank violated the UCL by engaging in a practice of

21  denying loan modifications, misrepresenting his right to

22  challenge the bank's calculation of the Net Present Value of his

23  home, misrepresenting whether a foreclosure sale would occur, and

24  wrongfully conducting a trustee's sale.  (FAC ¶ 66.)

25           Like his initial claim, plaintiff's amended claim fails

26  to allege that this conduct was the cause of his injury.

27  Plaintiff admittedly defaulted on his loan prior to any alleged

28  misconduct by U.S. Bank, (<u>see</u> FAC ¶ 14-15), and his "allegations

1  indicate that plaintiff lost [his] home because [he] defaulted on

2  the loan, not because of defendants' alleged representations that

3  defendants would approve plaintiff for a loan modification."

4  Ortiz v. Am.'s Servicing Co., No. EDCV 12-191 CAS (SPx), 2012 WL

5  2160953, at *8 (C.D. Cal. Jun. 11, 2012); see also DeLeon v.

6  Wells Fargo Bank, N.A., 10-CV-10390-LHK, 2011 WL 311376, at *7

7  (N.D. Cal. Jan. 28, 2011) ("Without some factual basis suggesting

8  that Plaintiffs could have cured the default . . . the Court

9  cannot reasonably infer that Wells Fargo's alleged

10  misrepresentations resulted in the loss of plaintiff's home.

11  Rather, the facts alleged suggest that Plaintiffs lost their home

12  because they became unable to keep up with monthly payments and

13  lacked the financial resources to cure the default.").  As a

14  result, "the alleged post-default misrepresentations could not

15  have caused plaintiff's default, [and] plaintiff lacks standing

16  to bring [his] UCL claim."  Ortiz, 2012 WL 2160953, at *8.

17  Accordingly, the court must dismiss plaintiff's UCL claim.[6]

18  D.   Leave to Amend

19       While leave to amend must be freely given, the court is

20  not required to permit futile amendments.  See DeSoto v. Yellow

---

21       [6]   Although plaintiff's UCL claim is entirely bereft of
22  allegations relating to causation, plaintiff does allege
    elsewhere that U.S. Bank's conduct caused the foreclosure
23  because, "[h]ad plaintiff been informed a sale was going to take
    place[,] he would . . . have been able to obtain an injunction to
24  enjoin the trustee's sale."  (FAC ¶ 50.)
         To the extent that this injunction would have been
25  based on U.S. Bank's alleged promise to offer plaintiff a loan
    modification, (see id.), the court has found that plaintiff's
26  underlying claim lacks merit.  Plaintiff identifies no other
    basis on which he could have enjoined or otherwise prevented the
27  trustee's sale, and this allegation therefore fails to state a
    plausible claim under the UCL.
28

1   <u>Freight Sys., Inc.</u>, 957 F.2d 655, 658 (9th Cir. 1992).  Because

2   the court has already permitted plaintiffs to amend their

3   pleadings and it appears that plaintiffs are unable to state a

4   viable claim against defendants, all claims will be dismissed

5   with prejudice and without leave to amend.

6            IT IS THEREFORE ORDERED THAT U.S. Bank's motion to

7   dismiss plaintiff's first amended complaint be, and the same

8   hereby is, GRANTED.

9            The Clerk of the Court is directed to enter a judgment

10  of dismissal in accordance with this Order and close the file.

11  Dated:  October 9, 2013

12

13  WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17